# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| DANNY TRUCKS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:11-CV-00830-JCH-NAB |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION OF
## UNITED STATES MAGISTRATE

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the Commissioner's final decision denying Danny Trucks' ("Trucks") applications for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq*. and Supplemental Insurance Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq*. Trucks filed a Complaint and Brief in Support of the Complaint. (Doc. 1; Doc. 15). The Commissioner filed an Answer and a Brief in Support of the Answer. (Doc. 11; Doc. 18). Trucks did not file a Reply. This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C.A. § 636(c)(1). (Doc. 5). For the reasons set forth below, the undersigned recommends that the Commissioner's decision be affirmed.

## I.
## PROCEDURAL HISTORY

Trucks filed applications for Disability Insurance Benefits and Supplemental Insurance Income on May 6, 2009. (Tr. 88-97, 98-101). His claim was denied at the initial determination level and Trucks filed a timely request for a hearing before an Administrative Law Judge ("ALJ"). (Tr. 48-49). The ALJ held a hearing and issued an unfavorable decision dated March

10, 2010. (Tr. 10-21). The Appeals Council denied Trucks' request for review dated April 8, 2011. (Tr. 1-6). As such, the decision of the ALJ stands as the final decision of the Commissioner. Trucks filed this appeal on May 10, 2011.

## II.
## EVIDENCE BEFORE THE ALJ

### A. Testimony at the Hearing

The ALJ held a hearing on February 8, 2010. At the hearing the ALJ heard testimony from Trucks and vocational expert, Delores Gonzales. Trucks was represented by counsel at the hearing.

#### 1. Trucks' Testimony

Trucks testified that he is a 46 year old high school graduate. (Tr. 26-27). In past years, he has worked as a cook at Denny's and Varsity, but had worked as a self-employed window washer from 2005 until the time of the hearing. (Tr. 27-28). As a restaurant employee, Trucks cooked and cleaned the restaurant and parking lots. (Tr. 33-34). Trucks testified that he earned approximately $2000 a year washing windows and worked 1-2 hours a week cleaning windows of businesses. (Tr. 27).

Trucks testified that he underwent three surgeries on his right knee in 1977, 1980 and 1981. *Id*. He stated that he received x-rays at Washington Hospital[1] in June or July of 2009 and the doctors said his knee cap was broken in three places with 14 to 15 bone spurs protruding out. *Id*. Trucks stated that the bone spurs were sticking out into his muscles, causing him "real bad irritation" and causing swelling in his knee where he could not walk. (Tr. 29). He testified that there were periods of time every day where he was unable to walk. *Id*. Trucks further testified

---

[1] Here, Trucks is referencing St. Johns Mercy Hospital in Washington, Missouri. (Tr. 156).

that he suffered knee pain 90% of the time and he could not walk on his knee 90% of the time because he feared swelling. *Id.*

Trucks also testified to that he had cranial horn on top of his head which bothered him and resulted in severe headaches. (Tr. 29-30). He stated that he received a CAT scan on the same day as his x-rays, but was prescribed no medications. *Id.* Trucks testified that he experienced headaches daily, accompanied by dizziness. *Id.* He stated that his headaches caused him to lose balance and he sometimes experienced nausea and vomiting, as well. *Id.* Trucks testified that he remedied his headaches by lying down for two to three hours and icing his forehead. (Tr. 30-31).

Trucks testified that sitting for long periods of time and walking aggravated his right leg pain. (Tr. 31). He stated that he usually sat with his leg extended at home to alleviate pressure because some leg movements resulted in tear-provoking pain. *Id.* Trucks stated that he propped his leg up at home for six to eight hours a day to cure or prevent swelling. *Id.* He testified that he could only drive a half hour or 45 minutes before his knee would hurt severely. (Tr. 32).

Trucks also stated that in his past employment, the cranial spur on his head caused him to fall down and the spur also prevented him from wearing a hat while cooking, which resulted in customer complaints and reprimands from his supervisors. *Id.* He testified that he bathed every other day because his leg made it difficult to stand in the shower and to get in and out of the bathtub. (Tr. 32-33).

### 2. Delores Gonzales' Testimony

At the hearing, Delores Gonzales (the "VE") testified that Trucks' past jobs were "at least medium." (Tr. 34). The ALJ posed the following hypothetical to the VE:

> [W]e've got a hypothetical claimant age 41 at the alleged date of onset with five years of education, same past work experience. In the first one it's been opined this hypothetical claimant can lift and carry 20 pounds occasionally, 10 pounds frequently, stand or walk for 6 hours ou[t] of 8, sit for 6. Can occasionally climb stairs and ramps, never ropes, ladders, and scaffolds. Occasionally stoop, kneel, and crouch. Should avoid concentrated exposure to extreme cold, hazards of unprotected heights and vibrations. Given those restrictions and those alone, could this hypothetical claimant return to any past relevant work?

(Tr. 34). The VE testified that the hypothetical claimant could not return to Trucks' past relevant work. (Tr. 34-35). However, the VE testified that Trucks could perform other "light, unskilled" work that would fit the hypothetical, including an order caller and cashier jobs, which existed in significant numbers in the local, regional, and national economy. (Tr. 35).

The ALJ posed a second hypothetical to the VE:

> [I]t's ten pounds occasionally, less then ten pounds frequently, stand or walk for two hours out of eight, sit for six, everything else stays the same. Would there be examples of sedentary work that would fit that hypothetical?

*Id*. The VE answered in the affirmative and proffered an information clerk and order clerk as "sedentary, unskilled" work which could be performed and existed in significant numbers in the local, regional, and national economy. (Tr. 35). Additionally, the VE verified that her testimony was consistent with both the Dictionary of Titles and the Selected Characteristics of Occupations. (Tr. 35-36).

Trucks' counsel asked the VE if an individual in the ALJ's last hypothetical who had to "prop their leg up for six hours per day" would be compatible with any of the jobs she described. (Tr. 36). The VE answered in the negative and stated that the person would need to be accommodated in order to be able to work with such a limitation. *Id*. Further, Trucks' counsel asked the VE if a person "had to leave the work station, because of medical conditions on a regular basis" if that would be incompatible with the previously mentioned work. *Id*. The VE

4

testified in the affirmative and stated "the person would need to be able to maintain being at task for at least two hours before taking a short break." (Tr. 36).

**B. Medical Records**

On June 10, 2009, Trucks visited Barry Burchett, M.D. ("Dr. Burchett") at Tri-State Occupational Medicine, Inc. for an internal medicine examination. (Tr. 149- 54). Trucks' chief complaint was disability due to problems with his leg. (Tr. 149). Trucks reported being involved in a diving board incident 30 years prior, which required extensive surgery. *Id*. A year after the diving board incident, Trucks claimed he reinjured his knee which required more extensive reconstructive surgery. *Id*. Dr. Burchett noted that Trucks had not seen an orthopedic surgeon since his second surgery. *Id*. Trucks complained of increasing knee problems in the past five years with bending, standing, or significant standing and walking. *Id*. Trucks claimed the pain in his knee was constant and limited his activity; he sometimes used ice to reduce swelling and occasionally wore a knee splint. *Id*. Dr. Burchett examined Trucks' upper and lower extremity strengths and each were full strength, receiving a 5/5 rating. (Tr. 153). Dr. Burchett concluded Trucks had "at least a moderately deformed right knee with bony hypertrophy" and "significant decreased range of motion in the right knee." (Tr. 152). Dr. Burchett further assessed that Trucks had "significant restriction in squatting" and "some limitation on standing on the right knee." *Id*. Dr. Burchett observed, however, that Trucks walked without a specific limp. *Id*.

On July 6, 2009, Trucks visited St. John's Mercy Hospital with complaints of right leg pain, blurred vision, pain from a growth on top of his head and headache. (Tr. 156-72). A physical examination revealed no substantial abnormalities and Trucks responded in the negative

to any symptoms of dizziness. (Tr. 159). A head CT scan was unremarkable and revealed no acute intracranial process. (Tr. 164). Four x-ray views of Trucks' knee revealed old posttraumatic changes patella, mild medial compartmental degenerative change, and moderate patellofemoral compartment degenerative change. (Tr. 165). Melissa Stapp, M.D. ("Dr. Stapp") provided Trucks with discharge instructions for osteoarthritis ("the most common form of arthritis in adults over 50" and "may be related to excess 'wear and tear'"). (Tr. 166). Additionally, Trucks received a prescription for non-steroidal, anti-inflammatory medication. (Tr. 167). Trucks was advised to take one Diclofenoc tab twice daily with food and to follow up with Dr. Verdine and Dr. Linz. (Tr. 168).

Trucks did not return for medical treatment until September of 2010. *Id*. On September 16, 2010, Trucks received two chest x-rays. (Tr. 197). The two views revealed normal results. *Id*. On September 21, 2010, Trucks was admitted to Missouri Baptist Hospital- Sullivan complaining of a lesion on the scalp. (Tr. 179-80). Jaroslaw Michalik, M.D. ("Dr. Michalik") examined the left forehead area where the lesion was located and recommended an excision. (Tr. 180-81). Trucks agreed to proceed with excision surgery. *Id*.

On December 8, 2010, Trucks visited Missouri Baptist Hospital- Sullivan[2] with complaints of dizziness and was examined by Thomas Jackson, M.D. ("Dr. Jackson"). (Tr. 202-05). Trucks stated that the dizziness occurred persistently and described feelings of floating, spinning and swimming. (Tr. 202). Dr. Jackson noted that Trucks' symptoms were aggravated by turning his head to the right. (Tr. 203). However, a review of Trucks' neuro/psychiatric systems revealed negative results for dizziness, headache, and lightheadedness. *Id*. Dr. Jackson assessed benign positional vertigo and otitis media. (Tr. 204).

---

[2] The record states on page 200 that the medical records following that page were from St. Clair Clinic. However, the record in its entirety supports a finding that Trucks visited Dr. Jackson at Missouri Baptist- Sullivan only and not at St. Clair Clinic.

6

Trucks returned to Missouri Baptist Hospital- Sullivan on January 19, 2011 with complaints of dizziness. (Tr. 206). Trucks described spinning effects, which were aggravated by rapid movement, but reported that the problem was improving and was relieved by medication. *Id*. Dr. Jackson assessed dizziness and ordered a CT scan of Trucks' brain. (Tr. 206-07). On January 24, 2011, Trucks received a CT scan which revealed no intracranial hemorrhage or acute intracranial abnormality. (Tr. 176).

Trucks returned to Missouri Baptist Hospital- Sullivan on January 25, 2011 with continued complaints of dizziness. (Tr. 174-75). Trucks stated to Dr. Jackson that he became very dizzy whenever he engaged in any physical activity, especially when he cut and split firewood, which he did frequently. *Id*. Also, Trucks reported having problems with diplaplia[3] and maintaining focus when turning his head. *Id*. Dr. Jackson reported that Trucks' cervical range of motion and muscle tone was normal, but his right knee strength tone was rated 3+/5. *Id*. Dr. Jackson noted that Trucks had a normal steady gait when ambulated and looking downward, however, when he looked forward or turned his head, his gait was less steady. (Tr. 175). Trucks was able to stand in tandem maintaining balance with minimal trunk movement, and was able to single leg stand on the left lower leg, but not the right, due to weakness. *Id*. Trucks was instructed to attend physical therapy 1-2 times a week for vestibular exercises and training. *Id*.

## III.
## ALJ DECISION

The ALJ determined that Trucks met the insured status requirements of the Social Security Act through June 30, 2009 and had not engaged in substantial gainful activity since December 31, 2004. (Tr. 15). Additionally, the ALJ determined that Trucks has a severe impairment of osteoarthritis of the right knee and a non-severe impairment of recent onset of

---

[3] Commonly known as double vision.

headaches. *Id*. However, the ALJ concluded that Trucks does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 15-16). The ALJ found that Trucks has the RFC to perform almost a full range of light work as defined by 20 C.F.R. §§ 404.1567(b) and 416.967(b) except that he must avoid concentrated exposure to extreme cold, hazards of unprotected heights and vibrations. (Tr. 16). Trucks could occasionally climb stairs and ramps but never climb ropes, ladders, or scaffolds and he could occasionally stoop, kneel and crouch. *Id*.

The ALJ determined that Trucks was unable to perform his past relevant work but when considering Trucks' residual functional capacity, age, education, and work experience, he could perform light work. (Tr. 20). Thus, the ALJ concluded that Trucks had not been under a disability, as defined by the Social Security Act, from December 31, 2004 through the date of the decision. (Tr. 21).

## IV.
## LEGAL STANDARDS

A court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Gowell v. Apfel*, 2542 F.3d 793, 796 (8th Cir. 2001). Substantial evidence is less than a preponderance, but is enough so that a reasonable mind would find it adequate to support the ALJ's conclusion. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). As long as there is substantial evidence on the record as a whole to support the Commissioner's decision, a court may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992). In determining whether existing evidence is substantial, a court considers "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Singh v. Apfel*,

222 F.3d 448, 451 (8th Cir. 2000) (quoting *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999)).

To determine whether the decision is supported by substantial evidence, the Court is required to review the administrative record as a whole to consider:

(1) the credibility findings made by the Administrative Law Judge;

(2) the education, background, work history, and age of the claimant;

(3) the medical evidence from treating and consulting physicians;

(4) the plaintiff's subjective complaints relating to exertional and non-exertional impairments;

(5) any corroboration by third parties of the plaintiff's impairments; and

(6) the testimony of vocational experts when required which is based upon a proper hypothetical question.

*Brand v. Secretary of Dep't of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

Disability is defined in the social security regulations as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 416(i)(1); 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 404.1505(a); 20 C.F.R. § 416.905(a). In determining whether a claimant is disabled, the Commissioner must evaluate the claim using a five-step procedure.

First, the commissioner must decide if the claimant is engaging in substantial gainful activity. If the claimant is engaging in substantial gainful activity, he is not disabled.

Next, the Commissioner determines if the claimant has a severe impairment which significantly limits the claimant's physical or mental ability to do basic work activities. If the claimant's impairment is not severe, he is not disabled.

If the claimant has a severe impairment, the Commissioner evaluates whether the impairment meets or exceeds a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment satisfies a listing in Appendix 1, the Commissioner will find the claimant disabled.

If the Commissioner cannot make a decision based on the claimant's current work activity or medical facts alone, and the claimant has a severe impairment, the Commissioner reviews whether the claimant can perform his past relevant work. If the claimant can perform his past relevant work, he is not disabled.

If the claimant cannot perform his past relevant work, the Commissioner must evaluate whether the claimant can perform other work in the national economy. If not, the Commissioner declares the claimant disabled. 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.

When evaluating evidence of pain or other subjective complaints, the ALJ is never free to ignore the subjective testimony of the plaintiff, even if it is uncorroborated by objective medical evidence. *Basinger v. Heckler*, 725 F.2d 1166, 1169 (8th Cir. 1984). The ALJ may, however, disbelieve a claimant's subjective complaints when they are inconsistent with the record as a whole. *See, e.g., Battles v. Sullivan*, 992 F.2d 657, 660 (8th Cir. 1990). In considering the subjective complaints, the ALJ is required to consider the factors set out by *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984), which include:

> claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the objective medical evidence; (2) the subjective evidence of the duration, frequency, and intensity of plaintiff's pain; (3) any precipitating or aggravating factors; (4) the claimant's daily activities; (5) the dosage, effectiveness and side effects of any medication; and (6) the claimant's functional restrictions.

*Id*. at 1322.

# V.
# DISCUSSION

Trucks raises three points of error in asserting that the ALJ's decision is not supported by substantial evidence. First, Trucks claims the ALJ failed to properly consider the severity of his dizziness. Second, Trucks claims the ALJ failed to properly consider his credibility. Third, Trucks contends that the ALJ's RFC determination is not supported by substantial evidence.

## A. ALJ's Severe Impairment Determination

To be considered disabled under the Social Security Act, a claimant must have a severe impairment that prevents the claimant from performing their past relevant work or other substantial gainful work in the national economy. 20 C.F.R. § 404.1505. An "impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508. "A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms[.]" *Id*. A severe impairment is defined as one which significantly limits the claimant's physical or mental ability to do basic work activities. *See Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (quoting 20 C.F.R. § 404.1520(c)).

Here, the ALJ determined that Trucks has the severe impairment of osteoarthritis of the right knee, but concluded that Trucks' headaches and dizziness were not severe during the relevant period. (Tr. 15-19). The undersigned finds this decision to be supported by substantial evidence.

Trucks filed for disability benefits on May 6, 2009 complaining of "right leg problems." Trucks had not been to the doctor since his alleged onset date of December 2004. At the time of the ALJ's decision, medical records on file were minimal and consisted of two doctor visits:

June 10, 2009 and July 6, 2009.  When Dr. Burchett examined Trucks on June 10, his chief complaint was a disability with his leg.  Dr. Burchett found that Trucks had osteoarthritis of the right knee.  Dr. Burchett reported that Trucks complained of increasing problems with pain in his knee when bending, standing, or significant standing or walking.  Trucks did not complain of dizziness or headaches.  On July 6, Dr. Stapp examined Trucks and he complained of leg problems, a growth on his forehead and headaches.  However, Trucks denied having symptoms of dizziness.  Dr. Stapp diagnosed Trucks with osteoarthritis and recommended anti-inflammatory medication.  There is no evidence in the record indicating that Trucks has more severe physical limitations other than his osteoarthritis which was supported by reports from both Dr. Burchett and Dr. Stapp.  Therefore, the undersigned finds the medical records reviewed by the ALJ supports a finding that Trucks' dizziness was non-severe.

Trucks further argues that the ALJ failed to consider new medical evidence submitted to the Appeals Council approximately a year after the ALJ's decision.  "In cases involving the submission of supplemental evidence subsequent to the ALJ's decision, the record includes that evidence submitted after the hearing and considered by the Appeals Council."  *Bergmann v. Apfel*, 207 F.3d 1065, 1068 (8th Cir. 2000) (citing *Jenkins v. Apfel*, 196 F.3d 922, 924 (8th Cir. 1999).  In such a situation, "[a] court's role is to determine whether the ALJ's decision 'is supported by substantial evidence on the record as a whole, including the new evidence submitted after the determination was made.'"  *Id.* (citing *Riley v. Shalala*, 18 F.3d 619, 622 (8th Cir. 1994)).  "In practice, this requires [a] court to decide how the ALJ would have weighed the new evidence had it existed at the initial hearing."  *Id.* (citing *Riley*, 18 F.3d at 622).  Thus, the appropriate inquiry is not whether the Appeals Council erred, but whether the record as a whole

supports the decision made by the ALJ. *Perks v. Astrue*, No. 11-3041, 2012 WL 3168495, at *5 (8th Cir. Aug. 7, 2012) (citing *Cunningham v. Apfel*, 222 F.3d 496, 500 (8th Cir. 2000))

Even considering the additional medical records submitted by Trucks, the evidence supports the ALJ's decision. A severe impairment is one that limits Trucks' physical or mental abilities to do work. *Pelkey*, 433 F.3d at 577. In December 2010, Dr. Jackson noted Trucks' complaints of dizziness and prescribed medication. On Trucks' return visit to Dr. Jackson, in January 2011, he reported that his problem with dizziness and spinning effects had improved and were relieved by the medication. "If an impairment can be controlled by treatment or medication, it cannot be considered disabling." *Brown v. Astrue*, 611 F.3d 931, 955 (8th Cir. 2010). Moreover, despite Trucks' complaints of dizziness, he is able to perform his physical duties as a window washer, one to two hours a week, which requires standing from one to two hours to complete. Also, Trucks reported to Dr. Jackson that he frequently cuts and splits wood, which also demonstrates that Trucks is able to perform physical activity despite his alleged bouts of dizziness. Trucks' testimony about his ability to engage in physical activity supports a finding that his dizziness is non-severe.

The undersigned is therefore convinced that the record as a whole contains substantial evidence which supports the ALJ's decision that Trucks' dizziness was non-severe.

### B. ALJ's Credibility Determination

Second, Trucks argues that the ALJ failed to properly consider his credibility. The undersigned disagrees and finds that substantial evidence supports the ALJ's credibility determination.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the claimant's complaints. *Guillams v. Barnhart*, 393 F.3d

798, 802 (8th Cir. 2005); *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004). Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. *Millbrook v. Heckler*, 780 F.2d 1371, 1374 (8th Cir. 1985). "Where adequately explained and supported, credibility findings are for the ALJ to make." *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000).

In assessing a claimant's credibility, the ALJ has to consider all of the evidence in the record and the *Polaski* factors (prior work record, and observations by third parties and doctors relating to such matters as (1) claimant's daily activities, (2) the duration, frequency, and intensity of pain, (3) precipitating and aggravating factors, (4) the dosage, effectiveness, and side effects of medication, and (5) functional restrictions). *Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir. 1984). "The ALJ [is] not required to methodically discuss each *Polaski* factor, so long as he acknowledge[s] and examine[s] those considerations before discounting the claimant's subjective complaints."

Here, the ALJ adequately supported his credibility determinations. In his discussion of Trucks' credibility, the ALJ noted that Trucks had not consistently received medical care for his alleged impairment. *See Edwards v. Barnhart,* 314 F.3d 964, 967 (holding that ALJ may discount disability claimant's subjective complaints of pain based on the claimant's failure to pursue regular medical treatment). Moreover, there was no explanation for the lack of inconsistent treatment. The minimal medical records did not indicate that any treating physician had ever found or imposed any long term or significant physical limitations on Trucks' functional capacity. Although, Dr. Burchett found Trucks had limitations squatting and standing, his lower extremity muscle strength was 5/5. Also, the ALJ explained that the minimal medical evidence and inconsistency in treatment outweighed Trucks' subjective complaints when

determining Trucks' credibility. Therefore, based on Trucks' lack of medical records regarding ongoing mental or physical impairments imposing severe limitations on his ability to function, the ALJ concluded that Trucks' credibility concerning his subjective complaints were undermined by the record. The undersigned believes the ALJ's explanation for undermining Trucks' credibility evidences that he acknowledged or at least considered the *Polaski* factors in assessing Trucks' credibility. For these reasons, the undersigned finds that the ALJ's credibility determination is supported by substantial evidence.

## C. ALJ's RFC Determination

Finally, Trucks argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to include all of Trucks' limitations, specifically his dizziness symptoms.

RFC is defined as what the claimant can do despite his or her limitations, and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545. The RFC is a function-by-function assessment of an individual's ability to do work related activities on a regular and continuing basis.[4] SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). It is the ALJ's responsibility to determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and the claimant's own descriptions of his limitations. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). Although the ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, a claimant's RFC is a medical question. *Hutsell v. Massanari*, 259 F.3d 707, 711 (8th Cir. 2001) (citing *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001)). Therefore, an ALJ is required to consider at least some supporting evidence from a medical professional. *See Lauer*, 245 F.3d at

---

[4]A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. SSR 96-8p, 1996 WL 374184, at *1.

704 (some medical evidence must support the determination of the claimant's RFC). An RFC determination made by an ALJ will be upheld if it is supported by substantial evidence in the record. *See Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006).

The burden is on the claimant and not the Social Security Commissioner to prove the claimant's RFC. *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995). However, the ALJ has an independent duty to develop the record despite the claimant's burden. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). "Some medical evidence must support the determination of the claimant's RFC." *Eichelberger*, 390 F.3d at 591 (citing *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000)) (internal quotation marks omitted). "[T]he ALJ should obtain medical evidence that addresses the claimant's 'ability to function in the workplace.'" *Id.* (quoting *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2003)).

The ALJ considered Trucks' testimony about his physical limitations, examined the limited medical records and considered the VE's findings, and concluded Trucks could occasionally climb stairs and ramps and occasionally stoop, kneel and crouch. Trucks testified at the hearing before the ALJ that he has cleaned windows one to two hours a week since his alleged onset date. He testified that there is a period every day in which he cannot walk and has to put ice on his knee, but that he can drive for 30-45 minutes before experiencing extreme pain. Additionally, Trucks told Dr. Jackson that he engages in physical activity, including cutting and splitting firewood. Trucks' testimony of his physical ability to stand for one to two hours a week and wash windows, drive 30-45 minutes without pain and cut and split firewood undermines Trucks' contention that he cannot at least perform "light, unskilled" work.

Dr. Burchett noted that Trucks had a moderately deformed right knee and significant decreased range of motion. Trucks had significant restriction in squatting and some limitation on

standing on the right knee, however, his lower extremity muscle strength was 5/5 and he walked without a specific limp. Additionally, Dr. Stapp's examination of Trucks' right leg revealed no swelling, tenderness, redness, or fluid. Thus, review of the limited medical records also undermines Trucks' assertions that he is not able to perform "light, unskilled" or "light, sedentary" work. Neither Dr. Burchett nor Dr. Stapp has placed long-term, significant restrictions or limitations on Trucks' physical activities. In fact, on Trucks' January 24, 2011 visit to Dr. Jackson, he was advised to perform physical therapy 1-2 times a week to accompany his medications which relieved his dizziness. This supports the conclusion that Trucks' physical limitations allow him to engage in at least some light physical activities. Other medical records presented do not address alleged physical impairments during the relevant period.

Following the hypotheticals posed by the ALJ, the VE testified that Trucks could not resume past substantial gainful activity but could perform light, unskilled and light, sedentary work with his limitations on squatting, standing, and walking. The VE noted that the jobs of cashier and order caller are light, unskilled and information clerk and order clerk are light, sedentary work, which exists in substantial numbers in the local, regional, and national economy that Trucks can perform, notwithstanding his limitations.

Though it is a close question, the Court believes that the ALJ's decision was supported by substantial evidence. In *Eichelberger*, the court found that substantial evidence supported the ALJ's denial of benefits at step four where the claimant's subjective complaints had been discredited, no physician had placed significant work-related limitations on the claimant, and treatment notes indicated that the claimant had good strength in her shoulder. *Id.* at 591. Here, Trucks' subjective complaints have been discredited and no physician has placed work-related limitations on him. Further, Trucks' physician recommended physical therapy, which would

17

increase Trucks' activity, not decrease it. *See Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009) ("A lack of functional restrictions on the claimant's activities is inconsistent with a disability claim where, as here, the claimant's treating physicians are recommending increased physical exercise.") And, as the burden to show he could not perform his past relevant work was on Trucks, the adverse determination was a failure to carry that burden instead of a failure to develop the record. *See Eichelberger*, 390 F.3d at 592.

Here, after reviewing all relevant evidence, the ALJ concluded that Trucks has the RFC to perform almost a full range of light work as defined by 20 C.F.R. §§ 404.1567(b) and 416.967(b), except he can never climb ladders, ropes, or scaffolds, and must avoid concentrated exposure to extreme cold, hazards of unprotected heights and vibrations. The undersigned finds that the record as a whole supports this conclusion.

## VI.
## CONCLUSION

For the reasons set forth above, the undersigned finds that substantial evidence on the record, as a whole, supports the Commissioner's decision that Trucks is not disabled.

Accordingly,

**IT IS HEREBY RECOMMENDED** that the relief which Trucks seeks in his Complaint and Brief in Support of Complaint [Doc. 1; Doc. 15] be **DENIED**.

Dated this 5th day of September, 2012.

    /s/ Nannette A. Baker
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE